UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LORD EDWARDMANWEL
JOHNSON, #471435

        Plaintiff,

v.

UNKNOWN HARTER and
UNKNOWN GOUGH,

        Defendants.
_____/

Case No. 2:20-cv-74

Hon. Paul L. Maloney
U.S. District Judge

# REPORT AND RECOMMENDATION

## I.  Introduction

This Report and Recommendation (R&R) addresses the motion for summary judgment filed by Defendants Krystal Harter and Tim Gough (ECF No. 33).

Plaintiff — state prisoner Lord EdwardManwel Johnson — filed this civil rights action pursuant to 42 U.S.C. § 1983 on June 5, 2020.  (ECF No. 1.)  In his verified complaint, Johnson alleges that while he was confined at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan, Warehouse Supervisor Harter and Quartermaster Gough violated his First and Eighth Amendment rights.[1]  More specifically, Johnson alleges that Defendants acted with deliberate indifference to his

---

[1] In Johnson's response to Defendants' motion for summary judgment, Johnson also asserts that Defendants violated the Michigan Constitution of 1963 Article 1, § 16 and § 17.  (ECF No. 41, PageID.160-161.)  Because these claims are not a part of Johnson's complaint, they are not a part of this case.

serious medical needs by purposely delaying Johnson's receipt of wide toe box (WTB) shoes despite Johnson's medical accommodation. (*Id.*, PageID.1-9.) Johnson further alleges that after he filed a grievance against Defendants for the delay in ordering his WTB shoes, Defendants retaliated against him by ordering the wrong shoes, causing further delay. (*Id.*)

Defendants now move for summary judgment. (ECF No. 33.) Defendants argue that Johnson has not set forth verifying medical evidence that the delay in receiving his WTB shoes had a detrimental effect on Johnson, nor that Defendants consciously disregarded a substantial risk of serious harm. (ECF No. 34, PageID.111-113.) Defendants also argue that Johnson's evidence of a causal connection between his grievance and the delay in receiving his shoes is contradicted by the record. (*Id.*, PageID.115-117.) Finally, Defendants claim that they are entitled to qualified immunity. (*Id.*, PageID.116-117.)

The undersigned respectfully recommends that the Court grant Harter and Gough's motion for summary judgement because there are no genuine issues of material fact, and Defendants did not recklessly disregard a substantial risk to Johnson, or delay Johnson's receipt of his WTB shoes because Johnson filed a grievance.

## II. Factual Allegations

Johnson, Harter, and Gough provided affidavits and records setting forth the pertinent facts in this case.

### a. Johnson's Factual Allegations

On or about November 28, 2018, Johnson underwent surgery on his big toe in order to remove an ingrown toenail. (ECF No. 1, PageID.2.) Johnson says that after the surgery, his toe sometimes swelled to the point that was painful for him to walk. (*Id.*) On November 20, 2019, Nurse Practitioner (NP) Brenda Buchanan gave Johnson a special accommodation for WTB shoes. (*Id.*) NP Buchanan informed Johnson that the Quartermaster staff were responsible for ordering and administering medical shoes once the accommodation was on file. (*Id.*)

The next day, November 21, 2019, Johnson submitted his first kite with a copy of his accommodation to Defendants Harter and Gough. (ECF No. 41-5, PageID.199.) Between November 28, 2019, and January 10, 2020, Johnson submitted eight more kites to Harter and Gough requesting to be measured for WTB shoes. (*See* ECF Nos. 41-6, 41-7, 41-8, 41-9, 41-10, 41-11, 41-12, 41-13 (Johnson's Kites).) Johnson described his pain as "extreme" in two of the kites. (ECF Nos. 41-10, 41-11.) He also wrote that he had stopped going to the yard due to the pain starting January 3, 2020. (ECF Nos. 41-12, 41-13, 41-14, 41-15, 41-16.)

On January 14, 2020, Johnson spoke with Harter and Gough in person. (ECF No. 1, PageID.3.) Johnson says that he presented his medical accommodation and Harter told him that they were busy, and he would be called out soon for measurements. (*Id.*) Johnson informed Harter that he was going to file a grievance for the delay and Harter responded that making threats would not get him anywhere. (*Id.*) On January 22, 2020, Johnson filed a Step I grievance against Gough and

Harter for "deliberate indifference/negligence." (ECF No. 1-2, PageID.11; ECF No. 41-17, PageID.211 (Gough's Grievance).)

Johnson states that he was first called out to have his feet measured on January 31, 2020. (ECF No. 1, PageID.4.) However, on February 3, 2020, Johnson received the denial of his Step I grievance, wherein Gough stated that Johnson was called out for measurement on January 29, 2020 but did not show up and had to be rescheduled for January 31, 2020. (*Id.*) Johnson says that, in addition to lying, Gough violated MDOC policy by responding to a grievance that implicated Gough. (*Id.*, PageID.6.)

On February 28, 2020, Johnson says that he was called out to the Quartermaster, where Gough informed Johnson that he had found a pair of WTB shoes for him. (ECF No. 1, PageID.5.) However, the shoes were a size 9, which was far too small for Johnson. (*Id.*) Gough then handed Johnson a size 13, which Johnson tried but ultimately found to be too tight. (*Id.*) According to Johnson, when he handed the size 13 shoes back to Gough, Gough told Johnson that he could "either squeeze into [the] thirteens" or that he was "out of luck." (*Id.*) When Johnson complained, Gough stated: "We would've ordered the fourteens had you not wrote that dumb ass grievance, but since you like to complain, you can live with the pain. That'll give you something to think about next time you decide to grieve." (*Id.*)

Johnson says that he finally received the proper-sized WTB shoes on March 23, 2020. (*Id.*) Johnson alleges that the delay in receiving his WTB shoes caused him

4

unnecessary pain and an infection that required Epsom salt foot soaks for six months. (ECF No. 41-2, PageID.187; ECF No. 41-4, PageID.197.)

### b. Defendants' Factual Allegations

Harter states that she received a kite from Johnson in December 2019 but does not specify a particular date of receipt nor how many kites were received. (ECF No. 34-2, PageID.122 (Harter's Affidavit).) On December 26, 2020, Harter emailed Gough requesting that he take Johnson's shoe measurements so that she could place an order for WTB shoes. (ECF No. 34-4, PageID.129 (December 26 Email).) Gough states that he scheduled an initial call-out date of January 29, 2020 for Johnson to be measured. (ECF No. 34-3, PageID.126 (Gough Affidavit).) However, Johnson failed to appear for this call-out and the call-out was rescheduled for January 31, 2020. (*Id.*) Gough emailed the measurements to Harter that same day. (ECF No. 34-5, PageID.132 (January 31 to March 2 Email Chain).)

On February 7, 2020, after receiving approval from her supervisor, Harter placed an order with Michigan State Industries (MSI) for WTB medical shoes in size 14 4E. (ECF No. 34-7, PageID.136 (February 7 Purchase Order).) The order arrived on February 28, 2020; however, MSI sent size 9.5 4E shoes instead of size 14 4E shoes. (ECF No. 34-2, PageID.123.) Gough informed Harter of this issue on March 2, 2020, via email. (ECF No. 34-5, PageID.131.) On March 2, 2020, Defendants located shoes at the facility that they hoped would fit Johnson, but Johnson rejected them. (*Id.*)

On March 3, 2020, Harter placed a second order to MSI for WTB shoes in size 14 4E. (ECF No. 34-8, PageID.139 (March 3 Purchase Order).) The second order

shipped from MSI on March 18, 2020. (*Id.*) Johnson received the 14 4E WTB shoes on March 23, 2020. (ECF No. 34-2, PageID.123.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### IV. Deliberate Indifference

Johnson alleges that Harter and Gough acted with deliberate indifference to his medical needs by purposely delaying Johnson's receipt of the WTB shoes for which he had a medical accommodation.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*,

6

452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Id.* at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent

to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002)).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* The subjective component was

recently summarized in *Rhinehart v. Scutt*, 894 F.3d 721 (6th Cir. 2018). There, the court of appeals stated the following:

> [T]he plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness." This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.
>
> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.
>
> But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it."

*Id.* at 738–39 (6th Cir. 2018) (internal citations omitted).

### 1. Objective Component

Prisoners making a claim of delayed care must place verifying medical evidence in the record to show the detrimental effect of the delay. *Blackmore*, 390 F.3d at 898. Medical evidence must typically be introduced in the form of expert testimony. *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021). Harter and Gough argue that Johnson failed to present verifying medical evidence establishing the detrimental effect of the alleged delay in receiving the correct WTB shoes. The undersigned respectfully agrees with this analysis.

Johnson provides three medical records in his response to Defendant's motion for summary judgment. The first is a Special Accommodations Order from the MDOC

9

Bureau of Health Care Services detailing NP Buchanan's approval of WTB shoes for Johnson on November 20, 2019. (ECF No. 41-3, PageID.196.) The second is an MDOC Medical Detail Special Accommodations form that reflects that Johnson was allowed to have a bedside basin in his possession for foot soaks with Epsom salts starting on May 18, 2020. (ECF No. 41-4, PageID.197.) The form does not detail who approved the bedside basin or for what specific reason it was approved. The third and final medical record is a Health Care Request form documenting Johnson's claim of a toe infection on August 27, 2020. (*Id.*, PageID.198.) There is no evidence of a health care professional confirming the infection after Johnson reported it. And even assuming that Johnson's toe was infected, none of these records establish that it was caused by the alleged delay in providing Johnson's WTB shoes. Because Johnson does not provide sufficient medical proof that the delay in receiving his WTB shoes was "detrimental" to his health, Johnson's claim fails. But even had Johnson provided sufficient medical evidence, he has not created a genuine issue of fact as to the subjective component of his deliberate indifference claim.

### 2. Subjective Component

In addition to arguing that Johnson failed to provide medical evidence sufficient to meet the objective component of his claim, Harter and Gough argue that Johnson has not established that either defendant consciously exposed him to an excessive risk of serious harm. (ECF No. 34, PageID.112-113.)

The relevant records demonstrate that Harter and Gough performed their job duties in ordering Johnson's WTB shoes. On December 26, 2019, Harter emailed

10

Gough requesting that he measure Johnson's feet for the WTB shoe order. (ECF No. 34-4, PageID.129.) On January 31, 2020, Gough measured Johnson's feet (ECF No. 34-2, PageID.126) and reported the measurements to Harter (ECF No. 34-5, PageID.132). On February 7, 2020, Harter placed an order to MSI for Johnson's shoes in size 14 4E. (ECF No. 34-7, PageID.136.) When Harter and Gough received the wrong shoes from MSI on March 2, 2020, they attempted to find shoes for Johnson at the facility. (ECF No. 34-5, PageID.131.) After learning that the available shoes did not fit Johnson, Harter placed a second shoe order to MSI on March 3, 2020. (ECF No. 34-8, PageID.139.) This time, MSI sent the correct shoes. (ECF 34-10, PageID.144.)

Although Johnson contends that Gough told him Defendants would have ordered the right shoes had Johnson not filed his January 22, 2020 grievance, (ECF No. 1, PageID.5), the record blatantly contradicts this allegation. For one, Harter states in her affidavit that she ordered size 14 4E shoes on both occasions, but that MSI mistakenly sent a size 9.5 4E the first time around. (ECF No. 34-2, PageID.123.) Similarly, in Gough's affidavit, Gough denies intentionally delaying or interfering with Johnson's receipt of the proper WTB shoes or making a statement to Johnson regarding his grievance. (ECF No. 34-3, PageID.126.) Moreover, Defendants provided the February 7, 2020 purchase order form showing that Harter ordered size 14 4E shoes. (ECF No. 34-7, PageID.136.)

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should

11

not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). As such, Johnson's assertion that Defendants intentionally ordered the wrong sized shoe on February 7, 2020 does not create a genuine issue of material fact bearing on the subjective component of his deliberate indifference claim. Furthermore, while there were undoubtably delays between the issuance of Johnson's medical accommodation and his receipt of the shoes, there is no evidence to suggest that Defendants inferred and disregarded a substantial risk to Johnson.

In the opinion of the undersigned, Johnson has not provided evidence establishing a genuine issue of material fact regarding the subjective component of his deliberate indifference claim against Harter and Gough. Although Johnson is understandably frustrated with the time it took to receive his WTB shoes, he has not created a genuine issue of fact from which a reasonable jury could conclude that Harter or Gough acted with the equivalent of criminal recklessness.

### V.     Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* To prevail on a retaliation claim, retaliatory motive "must be

a 'but-for' cause [of the injury], meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019). The Sixth Circuit employs a burden-shifting approach with regards to the causal requirement:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X*, 175 F.3d at 399.

The Sixth Circuit has explained that "protected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his own behalf.'" *Hill v. Lappin*, 630 F.3d 468, 472 (2010) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir.2000)). This right extends to grievances that are, in accordance with MDOC policy, raised with staff prior to submitting a formal, written grievance. *Maben v. Thelen*, 887 F.3d 252, 265-66 (6th Cir. 2018) (explaining that it would be "unfair and illogical" to require prisoners to attempt informal resolution of a grievable issue, and then limit the recognition of protected conduct to filing formal, written grievances); MDOC PD 03.02.130(Q) (requiring a prisoner to attempt resolution of the grievable issue prior to filing a Step I grievance). "If the grievances are frivolous, however, this right is not protected." *Id*. Prisoners "cannot exercise that right in a manner that violates legitimate prison regulations or penological objectives." *Smith*, 250 F.3d at 1037. "'Abusive or manipulative use of a grievance system [is] not ... protected conduct,' and prison officials may take action in response

13

to the prisoner's improper use of the grievance process as long as the response aligns with a legitimate penological goal." *Griffin v. Berghuis*, 563 F. App'x 411, 416 (6th Cir. 2014) (quoting *King v. Zamiara,* 680 F.3d 686, 699 (6th Cir. 2012)).

Defendants do not dispute that Johnson engaged in protected conduct when he filed the January 22, 2020 grievance. Nor do Defendants contend that the delay in receiving WTB shoes pursuant to a special accommodation would not deter a person of ordinary firmness from continuing to engage in protected conduct. Instead, Defendants assert that Johnson has not shown that his protected conduct was a motivating factor behind the delay sufficient to shift the burden of production to Defendants. (ECF No. 34, PageID.115-117.) The undersigned agrees.

Johnson's primary evidence of a causal connection between his grievance and the delay in receiving his WTB shoes is his sworn allegation that Gough told him that Defendants would have ordered the right sized shoes had Johnson not submitted his grievance. As stated above, this allegation is blatantly contradicted by the record, and this Court will not rely on "visible fiction" in determining whether there is an issue of fact sufficient to overcome summary judgment. *Scott*, 550 U.S. at 380.

Moreover, under the circumstances of this case, the undersigned finds that temporal proximity is insufficient to sustain Johnson's burden with respect to causation. *Hill*, 60 F. 3d at 476 ("Although this court has concluded that evidence of temporal proximity between filing grievances and the adverse action provides some support for establishing retaliatory motive, it has been reluctant to find that such evidence alone establishes retaliatory motive." (citing *Holzemer v. City of Memphis*,

14

621 F.3d 512, 525–26, (6th Cir.2010))). Even viewed in the light most favorable to Johnson, the fact that he filed a grievance regarding his shoes on January 22, 2020, that Defendants ordered the shoes on February 7, 2020, and that Defendants received the incorrect shoes from the manufacturer on March 2, 2020, does not create a genuine issue of material fact as to whether the delay was motivated by Johnson's protected conduct. In fact, the sequence of events in this case indicates that Johnson's grievance triggered the Defendants to order the proper WTB shoes.

## VI. Qualified Immunity

Defendants finally argue that they are entitled to qualified immunity because they did not violate Johnson's clearly established constitutional rights. (ECF No. 34, PageID.117.)

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First,

the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,'" *al–Kidd, supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable

16

> official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, *supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix*, *supra*, at 309 (quoting *Anderson*, *supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

In the opinion of the undersigned, Harter and Gough are entitled to qualified immunity. No genuine issue of fact exist from which a reasonable jury could determine that Harter and Gough were either deliberately indifferent to Johnson's medical needs or that they retaliated against Johnson for filing a grievance.

17

## VII. Recommendation

The undersigned respectfully recommends that the Court grant Harter and Gough's motion for summary judgement because there are no genuine issues of material fact, and Defendants did not recklessly disregard a substantial risk to Johnson, or delay Johnson's receipt of his WTB shoes because Johnson filed a grievance.

If the Court accepts this recommendation, this case will be dismissed.

Dated: July 20, 2022                                /s/ *Maarten Vermaat*
                                                    MAARTEN VERMAAT
                                                    U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).